

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | COMPLAINT |
| vs. | |
| MARK D. WOODBURN and TERRY LACORE, | Civil Action No. 3-08CV1555-G |
| Defendants. | |

Plaintiff Securities and Exchange Commission alleges as follows:

## SUMMARY

1. This case concerns misconduct by two former officers and directors of Natural Health Trends Corp. ("NHT"), a Dallas-based multi-level marketing company. Mark D. Woodburn ("Woodburn"), the company's President, and Terry LaCore ("LaCore") (together, the "Defendants"), the CEO of NHT's chief subsidiary, took advantage of their positions and the company's lax internal controls to effectuate lucrative undisclosed related party transactions.

2. From 2001 through August 2005 (the "relevant period"), NHT's top distributor (the "Distributor") paid Woodburn and LaCore, directly and indirectly, approximately $2.5 million in undisclosed payments, which were a portion of sales commissions that NHT paid the Distributor.

3. In February 2004, Woodburn caused NHT to loan $256,200 to a Woodburn family-controlled company. Woodburn took steps to conceal the related party nature of the loan when it was discovered by NHT's new accounting management in the fall of 2004.

4. As a result of Woodburn and LaCore's activities, NHT failed to disclose, or inadequately disclosed, the related party transactions in periodic filings, registration statements, and proxy statements. After NHT discovered the extent of the executives' conduct in the fall of 2005, it demoted, and later terminated, Woodburn and Lacore. NHT's stock price dropped approximately 25%, from $15.55 to $11.66, after the company's October 5, 2005 announcement that it was demoting the officers, who had failed to cooperate with an Audit Committee investigation initiated in the fall of 2004.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. § 77u(a)] and Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78aa]. Defendants have, directly and indirectly, made use of the means or instrumentalities of interstate commerce and/or the mails in connection with the transactions described in this Complaint.

6. Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77u(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the acts and transactions described herein took place in the Northern District of Texas.

## DEFENDANTS

7. **Mark D. Woodburn**, an individual residing in Southlake, Texas, was NHT's president and a director from 2000 through October 2005 and CFO from 1999 through August 2004. The company terminated his employment on November 14, 2005.

8. **Terry LaCore**, a resident of Flower Mound, Texas, was an NHT director from March 2003 through October 2005 and the CEO of NHT's chief subsidiary, then known as

Lexxus International, Inc. ("Lexxus"), from its March 2001 inception through October 2005. The company terminated his employment on November 14, 2005.

## RELATED ENTITIES

9. **Natural Health Trends Corp.**, a Delaware corporation with its principal place of business in Dallas, Texas, is an international multi-level marketing business that sells personal care, wellness and "quality of life" products through a network of independent distributors. The company's stock has traded on the NASDAQ National Market system since February 22, 2005 under the symbol "BHIP," and prior to that date was quoted on the NASD over-the counter bulletin board. Its common stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act.

10. **Woodridge Development Corp.** (WDC") is a West Virginia corporation with its principal place of business in St. Mary's, West Virginia. WDC's bank account was controlled by a Woodburn family member, and it's only business was an unsuccessful West Virginia golf course development. Beginning in 2002, LaCore and Woodburn caused payments from the Distributor to be paid to WDC, apparently in order to take advantage of tax loss carryforwards the company had accumulated.

11. **Middle Island Construction Company** ("Middle Island") is a Delaware corporation with its principal place of business in Dallas, Texas. Middle Island was formed in 2001 and controlled by Woodburn. Woodburn caused the vast majority of the funds that WDC received from the Distributor to be paid to Middle Island. Woodburn then distributed the funds from Middle Island's account to LaCore and for the benefit of himself and his family.

12. **Culpepper Cattle Company** ("Culpepper") is a Delaware corporation with its principal place of business in Belpre, Ohio. Culpepper is owned and controlled by Woodburn

family members. In February 2004, Woodburn caused NHT to send $256,200 to an escrow account for one of Culpepper's land acquisitions (the "Culpepper loan").

## FACTS

13.     Woodburn and LaCore joined NHT in February 1999 when the company acquired the assets of Kaire International, a nutritional supplements multi-level marketing corporation. Woodburn directed NHT's day-to-day operations, including accounting and SEC reporting, while LaCore was in charge of developing the worldwide distributor network and expanding the business. NHT's growth accelerated rapidly after it created Lexxus in early 2001 to market products related to sexual vitality.

14.     Woodburn was both CFO and the sole member of NHT's board from August 2000 until March 2003. Woodburn was replaced as CFO in August 2004.

### Mark Woodburn and LaCore Profited from
### $2.5 Million in Payments from the Distributor

15.     During the relevant period, Woodburn and LaCore, or entities that they directly or indirectly controlled, received approximately $2.5 million from the Distributor, which had the effect of hiding the money's source and beneficiaries. The payments materially exceeded the disclosed annual compensation for LaCore and Woodburn.

16.     The Distributor agreed to pay up to 37.5% of the commissions he received from NHT as LaCore directed. The Distributor initially remitted the payments directly to LaCore himself. In 2001, LaCore received over $130,000, $30,000 of which he passed on to Woodburn and Culpepper.

17.     In early 2002, LaCore instructed the Distributor to make the payments to WDC. From 2002 through the fall of 2005, the Distributor paid approximately $2.4 million to WDC. Woodburn caused approximately $2 million of the Distributor payments to be transferred from

WDC to Middle Island. Woodburn subsequently distributed payments from that entity to himself, his family members, LaCore and Culpepper.

18. In the late summer of 2005, the Distributor made payments of $30,000 each directly to Woodburn and LaCore at LaCore's instruction.

19. In total, LaCore received or benefited from almost $1.2 million of the Distributor payments made either directly to him or through WDC and Middle Island. Woodburn and his family benefited, directly or indirectly through family-controlled companies, from almost $1.3 million of the Distributor payments. Woodburn and LaCore's receipt of these payments was not disclosed to NHT's investors until November 2005.

### Mark Woodburn Caused NHT to Make An Undisclosed Related Party Loan

20. During early 2004, Woodburn caused NHT to loan money to partially fund Culpepper's purchase of Kentucky land for which he had agreed to secure financing. In mid-February 2004, NHT wired $256,200 to an attorney escrow account for the benefit of Culpepper.

21. In March 2004, Woodburn, through Middle Island, made a $190,000 payment on the loan using money that Middle Island received from the Distributor payments. The remaining balance of the loan was reclassified to another receivable account and was written off at the end of March 2004.

22. In the fall of 2004, after he was no longer CFO, Woodburn told NHT accounting personnel that the loan was made to a business associate, and provided an unsecured promissory note as evidence. NHT accounting personnel restored the loan receivable, and the business associate's company subsequently repaid the remaining balance plus interest in December 2004. In fact, however, a Woodburn family-controlled company actually funded this payment.

23. In early 2005, Woodburn and the business associate signed affidavits stating that the business associate's company made the $190,000 loan payment in March 2004 and that none of the loan proceeds were paid or loaned to Woodburn or any entity with which he was affiliated. In truth, Woodburn made the $190,000 payment through Middle Island, and the loan was made for a Culpepper land purchase.

24. Accepting Woodburn's statements, the note and affidavits as true, NHT failed to disclose the Culpepper loan as a related party transaction in its Commission filings, including its 2004 Form 10-K filed in March 2005 and its S-1 registration statement, amended registration statement, and preliminary and definitive proxy statements filed in April 2005.

### Woodburn and LaCore Caused NHT to Make False and Misleading Commission Filings

25. Woodburn signed management representation letters to NHT's auditors in connection with each of their annual audits and quarterly reviews from the second quarter of 2001 through the second quarter of 2005. These letters represented, among other things, that the financial statements were prepared in accordance with generally accepted accounting principles ("GAAP"), that there had been no fraud involving management or employees who had significant roles in internal control, and that all related-party transactions had been properly recorded or disclosed in the financial statements.

26. NHT and Woodburn failed to disclose the Distributor payments in the representation letters. Moreover, Woodburn and LaCore both failed to disclose the Distributor payments in their February 2005 directors and officers ("D&O") questionnaires, which NHT used to prepare the April 2005 proxy statement that was incorporated by reference in the 2004 10-K filed March 31, 2005. In August 2005, Woodburn and LaCore again failed to disclose the Distributor payments when they both signed a representation letter in connection with the second

quarter 2005 auditor review. They inaccurately stated that they were not aware of any inappropriate transactions or business arrangements that were a material conflict of interest, that they were unaware of, among other things, any additional disclosure necessary to make the financial statements conform to GAAP, and that they had responded truthfully and fully to all of the auditor's inquiries during the review.

27.     As a result of the misrepresentations and omissions described above, NHT filed with the Commission preliminary and definitive proxy statements, annual statements on Forms 10-K and 10-KSB, a registration statement on Form S-1 and an amendment thereto, and a quarterly statement on Form 10-Q that included false and misleading statements and omissions concerning the Distributor payments and the Culpepper loan. These filings, all of which Woodburn signed, are identified in Appendix A, attached to this complaint and fully incorporated herein.

28.     Further, Woodburn certified NHT's Forms 10-KSB for the years ended December 31, 2002 and December 31, 2003, and Form 10-K for the year ended December 31, 2004.

## FIRST CLAIM
### Violations of Section 17(a) of the Securities Act
### [Against Defendants Woodburn and LaCore]

29.     Paragraphs 1 through 28 are re-alleged and incorporated by reference.

30.     Defendants, directly or indirectly, singly or in concert with others, by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security, have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices

and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

31. NHT filed a registration statement on Form S-1 and an amended registration statement on Form S-1/A with the Commission in connection with the offering of its securities. The registration statements incorporated by reference NHT's financial statements and other Commission filings.

32. In the offer and sale of securities and as part of and in furtherance of their scheme to defraud, Defendants, directly and indirectly, made false and misleading statements of material fact, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including but not limited to failing to disclose the Distributor payments and the Culpepper loan, as described in paragraphs 1 through 28 above.

33. Defendants engaged in the conduct described in this claim knowingly or with severe recklessness regarding the truth.

34. By reason of the foregoing, Defendants have violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### SECOND CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### [Against Defendants Woodburn and LaCore]

35. Paragraphs 1 through 34 are re-alleged and incorporated by reference.

36. Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, have: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

37. In the purchase and sale of securities and as part of and in furtherance of their scheme to defraud, Defendants, directly and indirectly, made false and misleading statements of material fact, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including but not limited to failing to disclose the Distributor payments and the Culpepper loan, as described in paragraphs 1 through 28 above.

38. Defendants engaged in the conduct described in this claim knowingly or with severe recklessness regarding the truth.

39. By reason of the foregoing, Defendants have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5].

### THIRD CLAIM
### Aiding and Abetting Defendant Woodburn's
### Violations of Exchange Act Section 10(b) and Rule 10b-5
### [Against Defendant LaCore]

40. Paragraphs 1 through 39 are re-alleged and incorporated by reference.

41. Based on the conduct alleged herein, Defendant Woodburn violated Section 10(b) of the Exchange Act and Rule 10b-5 by making false and misleading statements of material fact and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including but not limited to failing to disclose the Distributor payments and the Culpepper loan.

42. Defendant LaCore, in the manner set forth above, knowingly or with severe recklessness regarding the truth, provided substantial assistance to Defendant Woodburn in connection with his violations of Section 10(b) and Rule 10b-5.

43. By reason of the foregoing, Defendant LaCore aided and abetted Defendant Woodburn's violations of, and unless enjoined, will aid and abet further violations of Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5].

### FOURTH CLAIM
### Violations of Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-9
### [Against Defendants Woodburn and LaCore]

44. Paragraphs 1 through 43 are re-alleged and incorporated by reference.

45. Defendants, by use of the mails or any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate for the public interest or for the protection of investors, have: (a) solicited or permitted the use of their name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to Section 12 of the Exchange Act; or (b) solicited by means of any proxy statement, a form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances in which it is made, was false or misleading with respect to any material fact, or which omitted to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

46. NHT filed preliminary and definitive proxy statements in December 2002, February 2003, April 2003 and April 2005. Defendant Woodburn signed all the proxy statements despite knowing these statements failed to disclose the Distributor payments and the Culpepper loan (with respect to the April 2005 proxy statements). Defendant LaCore provided a false 2005 D&O questionnaire in which he failed to disclose his knowledge of material related-party transactions.

47. By reason of the foregoing, Defendants have violated and, unless enjoined, will continue to violate Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 [17 C.F.R. §§ 240.14a-3 and 240.14a-9].

## FIFTH CLAIM
### Aiding and Abetting Defendant Woodburn's Violations of Section 14(a) of the Exchange Act and Rules 14a-3 and 14a-9
### [Against Defendant LaCore]

48. Paragraphs 1 through 47 are re-alleged and incorporated by reference.

49. NHT filed preliminary and definitive proxy statements in December 2002, February 2003, April 2003 and April 2005. Defendant Woodburn signed all the proxy statements despite knowing these statements failed to disclose the Distributor payments. Defendant LaCore knowingly or with severe recklessness provided substantial assistance in Woodburn's failure to disclose the Distributor payments.

50. By reason of the foregoing, Defendant LaCore aided and abetted Defendant Woodburn's violations of, and unless enjoined, will aid and abet further violations of Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rules 14a-3 and 14a-9 [17 C.F.R. §§ 240.14a-3 and 240.14a-9].

## SIXTH CLAIM
### Aiding and Abetting NHT's Violations of
### Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13

[Against Defendant Woodburn]

51. Paragraphs 1 through 50 are re-alleged and incorporated by reference.

52. Based on the conduct alleged herein, NHT violated Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13 thereunder.

53. Defendant Woodburn, in the manner set forth above, knowingly provided assistance to NHT, as an issuer of securities pursuant to Section 12 of the Exchange Act, in its failing to file with the Commission, in accordance with the rules and regulations the Commission has prescribed, information and documents required by the Commission to keep reasonably current the information and documents required to be included in or filed with an application or registration statement filed pursuant to Section 12 of the Exchange Act and annual reports and quarterly reports as the Commission has prescribed.

54. By reason of the foregoing, Defendant Woodburn aided and abetted NHT's violations of, and unless enjoined, will aid and abet further violations of, Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, and 240.13a-13].

## SEVENTH CLAIM
### Violations of Rule 13a-14 of the Exchange Act
[Against Defendant Woodburn]

55. Paragraphs 1 through 54 are re-alleged and incorporated by reference.

56. Defendant Woodburn, in the manner set forth above, violated Rule 13a-14 of the Exchange Act by, directly or indirectly:

(a) certifying a periodic report containing financial statements filed by an issuer pursuant to Section 13(a) of the Exchange Act when he failed to:

(1) review the report;

(2) ensure, to the best of his knowledge, that the report did not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by the report;

(3) ensure, to the best of his knowledge, that the financial statements, and other financial information included in the report, fairly presented in all material respects the financial condition, results of operations and cash flows of the issuer as of, and for, the periods presented in the report;

(4) ensure that he had established and maintained disclosure controls and procedures, as defined in Exchange Act Rules 13a-15(e) and 15d-15(e), for the issuer and had: (i) designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under his supervision, to ensure that material information relating to the issuer, including its consolidated subsidiaries, was made known to him by others within those entities, particularly during periods in which the periodic report is being prepared; (ii) evaluated the effectiveness of the issuer's disclosure controls and procedures and presented in this report his conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by the report based on such evaluation; and (iii) disclosed in the report any change in the issuer's internal control over financial reporting that occurred during the issuer's most recent fiscal quarter (the issuer's fourth quarter in the case of an annual report) that had

materially affected, or was reasonably likely to materially affect, the issuer's internal control over financial reporting; and

(5) ensure that he disclosed, based on his most recent evaluation of internal control over financial reporting, to the issuer's board of directors (or persons performing the equivalent functions): (i) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which were reasonably likely to adversely affect the issuer's ability to record, process, summarize and report financial information; and (ii) any fraud, whether or not material, that involves management or other employees who had a significant role in the issuer's internal controls over financial reporting; and

(b) having a certification of disclosure, as specified in Exchange Act Rule 13a-14(a), (b) or (c), signed on his behalf pursuant to a power of attorney or other form of confirming authority.

57. By reason of the foregoing, Defendant Woodburn has violated and, unless enjoined, will continue to violate, Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14].

### EIGHTH CLAIM
### Aiding and Abetting NHT's Violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B)
### [Against Defendant Woodburn]

58. Paragraphs 1 through 57 are re-alleged and incorporated by reference.

59. Based on the conduct alleged herein, NHT violated Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act.

60. Defendant Woodburn, in the manner set forth above, knowingly or with severe recklessness, provided substantial assistance to NHT in connection with its failure to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected NHT transactions and dispositions of its assets.

61. Defendant Woodburn, in the manner set forth above, knowingly or with severe recklessness, provided substantial assistance to NHT in connection with its failure to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that:

(1) transactions were recorded as necessary to permit the preparation of financial statements in accordance with GAAP;

(2) transactions were recorded as necessary:

(a) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements; and

(b) to maintain accountability for assets;

(3) access to assets was permitted only in accordance with management's general or specific authorization; and

(4) the recorded accountability for assets was compared with the existing assets at reasonable intervals and appropriate action was taken with respect to any differences.

62. By reason of the foregoing, Defendant Woodburn aided and abetted NHT's violation of, and unless enjoined, will aid and abet further violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. § 78m(b)(2)(A)].

### NINTH CLAIM
### Violations of Rule 13b2-2 of the Exchange Act
### [Against Defendants Woodburn and LaCore]

63. Paragraphs 1 through 62 are re-alleged and incorporated by reference.

64. Defendants violated Rule 13b2-2 of the Exchange Act by, directly or indirectly:

(a) making or causing to be made a materially false or misleading statement to an accountant in connection with; or

(b) omitting to state, or causing another person to omit to state, any material fact necessary in order to make the statements made, in light of the circumstances under which such statements were made, not misleading, to an accountant in connection with:

(1) any audit, review or examination of the financial statements of an issuer; or

(2) the preparation or filing of any document or report required to be filed with the Commission.

65. By reason of the foregoing, Defendants have violated and, unless enjoined, will continue to violate, Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2].

### RELIEF REQUESTED

For these reasons, the Commission respectfully requests that the Court enter a judgment:

(a) permanently enjoining Defendant Woodburn from violating, directly or indirectly, Section 17(a) of the Securities Act and Sections 10(b), and 14(a) of the Exchange Act and Rules 10b-5, 13a-14, 13b2-2, 14a-3 and 14a-9 thereunder and aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1 and 13a-13 thereunder;

(b) permanently enjoining Defendant LaCore from violating, directly or indirectly, Section 17(a) of the Securities Act and Sections 10(b) and 14(a) of the Exchange Act and Rules 10b-5, 13b2-2, 14a-3 and 14a-9 thereunder and aiding and abetting violations of Sections 10(b) and 14(a) of the Exchange Act and Rules 10b-5, 14a-3 and 14a-9 thereunder;

(c) ordering Defendant Woodburn to pay a $60,000 civil penalty under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

(d) ordering Defendant LaCore to pay a $50,000 civil penalty under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

(e) prohibiting Defendants under Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)] and Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)] for five years from the date the judgment is entered;

(f) granting such further relief as this Court may deem just and proper.

Dated: September 3, 2008

Respectfully submitted,

*Jennifer D. Brandt*
Jennifer D. Brandt
Texas Bar No. 00796242
Securities and Exchange Commission
Fort Worth Regional Office
801 Cherry Street, 19th Floor
Fort Worth, TX 76102-6882
Ph: (817) 978-6442
Fax: (817) 978-4927
brandtj@sec.gov
COUNSEL FOR PLAINTIFFS

# APPENDIX A

| Name of Filing | Period | Date Filed |
|---|---|---|
| 10-KSB | 12-31-01 | 4-16-02 |
| Preliminary Proxy | | 12-11-02 |
| 10-KSB | 12-31-02 | 3-31-03 |
| Definitive Proxy | | 2-13-03 |
| Definitive Proxy | | 4-25-03 |
| 10-KSB | 12-31-03 | 4-13-04 |
| 10-KSB/A | 12-31-03 | 4-29-04 |
| 10-Q | 9-30-04 | 11-12-04 |
| 10-K | 12-31-04 | 3-31-05 |
| S-1 | | 4-13-05 |
| S-1/A | | 4-26-05 |
| Preliminary Proxy | | 4-11-05 |
| Definitive Proxy | | 4-27-05 |
| 10-Q | 3-31-05 | 5-16-05 |
| 10-Q | 6-30-05 | 8-15-05 |

JS 44 Reverse (Rev. 11/04)
JS 44(Rev. 11/04)



# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpo of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

**Defendants-**
Mark D. Woodburn and Terry Lacore

**3-08CV1555-G**

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Dallas**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jennifer D. Brandt
U.S. Securities & Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
(817) 978-6442

RECEIVED
SEP - 3 2008
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

ATTORNEYS (IF KNOWN)
Edwin Tomko
Curran Tomko Tarski LLP
2001 Bryan Street, Suite 2050
Dallas, Texas 75201
214-270-1404
*Counsel for LaCore*

Christopher Kirkpatrick
c/o Haynes and Boone LLP
901 Main St., Suite 3100
Dallas, TX 75202
214-651-5000
*Counsel for Woodburn*

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINT AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | PTF |  | PTF | PTF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | | | |
| | | | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 156 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | | ☐ 470 Racketeer Influenced and Corrupt Organizatio |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **PROPERTY RIGHTS** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 820 Copy rights | ☒ 850 Securities Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | ☐ 830 Patient | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | | ☐ 840 Trademark | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| | | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395FF) | ☐ 892 Economic Stabilization |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justic |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 290 All Other Real Property | | ☐ 540 Mandamus & Other | | ☐ 871 IRS - Third Party 26 USC 7609 | |
| | | ☐ 550 Civil Rights | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (Specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**VI. CAUSE OF ACTION** CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING (DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY):
Brief Description of cause:
Section 17(a) of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rules 10b-5, 13a-14, 13b2-2, 14a-3, and 14a-9, and aided and abetted NHT's violations of Section 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act and Rules 12b-20, 13a-1, and 13a-13.

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23    DEMAND $ _____   CHECK YES only if demanded in complaint:
JURY DEMAND ☐ YES  ☐ NO

**VIII. RELATED CASE(S)** (See Instructions):
IF ANY    JUDGE _____    DOCKET NUMBER _____

DATE
September 3, 2008

SIGNATURE OF ATTORNEY OF RECORD
*Jennifer D. Brandt*

FOR OFFICE USE ONLY
Receipt # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____